# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

SAMMY HALE, JR.          )
                                         )
      Plaintiff,           )        CIVIL ACTION FILE
                                         )        NO. 2:13-cv-00228-RWS-JCF
v.                            )
                                         )
BARROW COUNTY,      )
                                         )
      Defendant.      )

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

COMES NOW, Barrow County ("Defendant" or the "County"), and files this Brief in Support of Defendant's Motion to Dismiss in the above-styled case pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff's Complaint fails to state a claim against Defendant upon which relief may be granted, and should be dismissed for the reasons set forth below.

## INTRODUCTION

Plaintiff was fired from his position as Specialty Courts Director for the Superior Courts of the Piedmont Judicial Circuit based upon his arrest for sexual battery and his subsequent attempt to utilize his position with the Superior Court to talk his way out of the arrest. His termination was fully litigated before the Georgia Department of Labor ("GDOL") – at four levels – and the Superior Court

of Georgia, resulting in findings that he was terminated for willful misconduct. Now, Plaintiff attempts to relitigate the reason for his termination through the instant lawsuit.

First, Plaintiff's attempt at a second bite of the apple is barred by collateral estoppel because the prior state court proceeding involving the same parties already passed upon the reason for his termination (and already determined that Plaintiff's race was not the reason).  Second, Plaintiff's Title VII claim is barred based on his failure to file a timely charge of discrimination with the EEOC prior to filing this suit.  Third, the Complaint fails to state a claim against the County because Plaintiff was not employed by the County, and a Superior Court Judge who is not a final policymaker for the County made the termination decision.  For any or all of these reasons, Plaintiff's Complaint should be dismissed.

## FACTUAL ALLEGATIONS

Plaintiff was initially employed in the Barrow County District Attorney's Office as the Pretrial Diversion Coordinator beginning on November 28, 2005. (Complaint [hereinafter, "Doc. 1"], ¶¶ 6-7; Answer, ¶¶ 6-7, Exh. "G").   He remained employed in that position until around April 30, 2010.  (Id.).

As of approximately April 2010, a Specialty Courts Division was created and established in the Piedmont Judicial Circuit[1] by Judge Currie M. Mingledorff, II, a Superior Court of Barrow County Judge presiding in the Piedmont Judicial Circuit ("Judge Mingledorff"). (Answer, ¶ 6). Judge Mingledorff was named by the Piedmont Judicial Circuit as the Presiding Judge of the newly established Specialty Courts Division. (Answer, ¶ 6). A new Specialty Courts Director position was created to assist Judge Mingledorff in the administration of the Specialty Courts Programs. (Doc. 1, ¶ 7; Answer, ¶ 6, Exh. "F").

The job description for the Specialty Courts Director position was prepared in 2010 through consultation with Plaintiff, Plaintiff's then direct supervisor (Barrow County District Attorney Brad Smith), and Tracy BeMent, District Court Administrator for the Tenth Judicial Administrative District (the "10th JAD")[2]. The primary duty of the newly created Specialty Courts Director position was to direct, plan, administer and coordinate the daily activities of the Specialty Courts

---

[1] The Piedmont Judicial Circuit is a three-county judicial circuit compromising the Superior Court of Barrow County, the Superior Court of Banks County and the Superior Court of Jackson County. (O.C.G.A. § 15-6-1(32); Answer, ¶ 6).

[2] The 10th JAD administratively supervises the Piedmont Judicial Circuit and is one of ten such districts created by the General Assembly to provide regional court administration to the Superior Courts of Georgia. (O.C.G.A. § 15-5-32; Answer, ¶ 6).

Programs in the Specialty Courts Division of the Piedmont Judicial Circuit. (Answer, ¶6, Exh. "F").

Effective as of April 30, 2010, Judge Mingledorff made the decision to hire Plaintiff as Specialty Courts Director under his direct supervision. (Doc. 1, ¶ 7; Answer, ¶¶ 6-7, Exh. "G"). Plaintiff's position was one of public trust and involved strict supervision of criminal offenders to ensure they comply with all requirements to successfully complete the Specialty Court Programs such as the Pretrial Diversion Program, the Bad Check Program, the Drug Court, Mental Health Court and the DUI Court. (Answer, ¶ 6, Exh. "C", December 16, 2011 GDOL Hearing Transcript ["GDOL Tr."], p. 75, ll. 18-21, & Exh. "F"). As a result of this hiring decision and the fact that the Specialty Courts Director's duties and responsibilities included the same duties and responsibilities as Plaintiff's prior Pretrial Diversion Coordinator position, the Pretrial Diversion Coordinator position was ultimately eliminated. (Doc. 1, ¶ 7; Answer, ¶ 6, Exh. "G").

The funding of the salary for the newly created Specialty Courts Director position was divided among a Federal grant under the American Recovery and Reinvestment Act and the County's budgeted funds allocated at first to the District Attorney's Office and then to the Superior Court. (Answer, ¶ 6, Exh. "G"). The Specialty Courts Director position held by Plaintiff (as well as his prior position

with the Office of the Barrow County District Attorney as Pretrial Diversion Coordinator) was not subject to or covered by the County's civil service system. (Answer, ¶ 6, Exhs. "F"-"I").  At the time the Specialty Courts Director position description was prepared and approved, the base salary portion of the position was still being funded out of the District Attorney's Office budget like the previous Pretrial Diversion Coordinator position.  (Answer, ¶ 6).  As a result, the Specialty Courts Director position referenced the reporting to the District Attorney, rather than the Superior Court or Judge Mingledorff.  (Answer, ¶ 6, Exh. "F").  However, since the date the Specialty Courts Director position was created (including the period of time until the position began to be partially funded out of the Superior Court's budget in October 2010), the position was actually under the direct supervision of Judge Mingledorff.  (Answer, ¶ 6, Exhs. "F"-"I").

At all times relevant to Plaintiff's employment with the Office of the Barrow County District Attorney and then with the Superior Courts of the Piedmont Judicial Circuit, the County and its Board of Commissioners did not have supervisory powers over the Office of the Barrow County District Attorney, the Barrow County Superior Court including Judge Mingledorff, the Specialty Courts Division of the Piedmont Judicial Circuit, or the Piedmont Judicial Circuit itself. (Ga. Const. Art. IX, § 2, ¶ 1(c); Answer, ¶ 6, Exhs. "F"-I).  Judge Mingledorff

controlled Plaintiff's authority, duties, responsibilities and powers as Specialty Courts Director.  (Answer, ¶ 6, Exhs. "F"-"I").  Judge Mingledorff also controlled Plaintiff's work schedule and directed his work assignments.  (Answer, ¶ 6, Exhs. "F"-"I").  Judge Mingledorff was also the ultimate decision-maker responsible for personnel decisions concerning Plaintiff.  (Answer, ¶ 6, Exhs. "F"-"I").  The County's primary role in Plaintiff's employment was simply to pay approximately 60% of his salary through the approved County budget allocated to the Superior Court.  (Answer, ¶ 6, Exh. "G").

On September 11, 2011, Plaintiff was arrested by the Atlanta Police Department in a restaurant on an accusation of sexual battery by a female patron. (Doc. 1, ¶¶ 8-9). While he was being arrested, Plaintiff and his cousin made reference to Plaintiff's position at the Superior Court and to his work with the District Attorney.  (Answer, Exh. "C", GDOL Tr., p. 59, ll. 1-5; p. 60, l. 22 to p. 61, l. 17; p. 63, ll. 6-8).  Plaintiff missed work on September 12, 2011, as a result of his arrest and incarceration, and first contacted Judge Mingledorff about his arrest on the morning of September 13, 2011 after bonding out of the Fulton County Jail.  (Doc. 1, ¶ 10; Answer, ¶ 10, Exh. "C", GDOL Tr., p. 27, l. 25 to p. 28, l. 20, p. 40, ll. 8-17; p. 64, ll. 1-18, p. 65, ll. 1-20).

On September 16, 2011, Judge Mingledorff notified Plaintiff in writing that he was being placed on unpaid administrative leave pending the adjudication of the charges against him.  (Doc. 1, ¶ 11; Answer, ¶ 11, Exh. "H").  That letter further placed Plaintiff on notice that the Piedmont Judicial Circuit could elect to terminate his employment should it be deemed at any point to be in the best interest of the Circuit.  (Id.).  Through that letter, Plaintiff was notified that his recent arrest and incarceration on charges of sexual battery threaten to undermine the integrity and importance of his Specialty Courts Director position and may reflect conduct that is unbecoming of an executive employee of the Piedmont Judicial Circuit. (Id.).  Plaintiff was also notified that the pendency of the criminal charges against him will impede and interfere with his ability to satisfactorily perform his job.  (Id.).

On September 26, 2011, a preliminary hearing was held in the Fulton County State Court on the criminal charges against Plaintiff, and the charges were bound over for trial at the conclusion of that hearing upon a finding of probable cause.  (Doc. 1, ¶ 12; Answer, ¶ 12).

After learning that Plaintiff was unable to resolve the criminal charges against him at the preliminary hearing, Judge Mingledorff notified Plaintiff on September 27, 2011 that his employment with the Piedmont Judicial Circuit was

terminated effective September 30, 2011.  (Doc. 1, ¶ 14; Answer, ¶¶ 7, 14, Exh. "I").  Plaintiff was notified of the termination decision in person and through a September 27, 2011 letter from Judge Mingledorff.  (Doc. 1, ¶ 14; Answer, ¶ 14, Exhs. "E" & "I", Exh. "C", GDOL Tr., p. 68, ll. 1-24).

Following his termination, Plaintiff filed a claim for unemployment compensation benefits with the GDOL, which was denied by the GDOL's claim examiner on October 19, 2011.  (Answer, Eighth Defense, Exhs. "C" & "D").  Plaintiff appealed that claim denial to the GDOL's Administrative Hearing Officer ("AHO") on or about November 2, 2011.  (Answer, Eighth Defense, Exhs. "C"-"E").  On December 16, 2011, a hearing on that appeal was held before the AHO.  (Answer, Eighth Defense, Exhs. "C" & "D").   At that hearing, Plaintiff was represented by his counsel of record in this matter and given the opportunity to testify, submit documentary evidence, present witnesses and cross-examine witnesses.  (Id.).  On December 16, 2011, following the hearing, the AHO issued her decision that Plaintiff was disqualified from receiving unemployment compensation benefits because he was discharged from work due to his own fault in knowingly, deliberately and willingly violating the standard of conduct of which an employer has the right to expect when he was arrested and then subsequently referenced his position for his personal gain.  (Id.).  Plaintiff appealed the AHO's

decision to the GDOL Board of Review, and on January 31, 2012, the GDOL Board of Review adopted the findings of the AHO and affirmed the AHO's decision. (Id.). Then, Plaintiff appealed the GDOL Board of Review's affirmance of the AHO's decision by filing a motion for reconsideration. (Id.). On March 13, 2012, the GDOL Board of Review issued its Order denying Plaintiff's Motion for Reconsideration. (Id.).

Thereafter, Plaintiff appealed the GDOL's denial of unemployment compensation benefits to the Superior Court of Barrow County by filing a Petition for Judicial Review on March 26, 2012 in the state court, Civil Action File No. 12-CV-480-M (the "State Court Proceeding") (Answer, ¶ 6, Exh. "D"). The Judges of the Piedmont Judicial Circuit voluntarily recused themselves from hearing Plaintiff's appeal because Plaintiff's employment was terminated by Judge Mingledorff, a sitting Superior Court Judge of the Piedmont Judicial Circuit. (Id.). A hearing was held on May 28, 2013, wherein Plaintiff was in attendance and was represented by his counsel of record in this matter. (Answer, Eighth Defense, Exhs. "A" & "B"). The Superior Court affirmed the GDOL's denial of unemployment compensation benefits to Plaintiff by finding that there was evidence supporting the GDOL's determination that Plaintiff was disqualified from receiving unemployment compensation benefits because he was discharged from

9

work due to his own fault in knowingly, deliberately and willingly violating the standard of conduct of which an employer has the right to expect when he was arrested and then subsequently referenced his government position during the arrest.  (Answer, Eighth Defense, Exhs. "A" & "B").

On March 27, 2012, Plaintiff filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination based on Judge Mingledorff's September 27, 2011 termination decision.  (Doc. 1, ¶ 25; Answer, ¶ 25, Exhs. "K"-"M").  Plaintiff's EEOC charge was not filed with the EEOC until 182 days after he was notified of his termination.  (Answer, ¶ 25, Exhs. "K"-"M").

## ARGUMENT AND CITATION OF AUTHORITY

**A.    STANDARD OF REVIEW**

### 1.  Rule 12(b)(6)

Federal Rule 12(b)(6) permits litigants to move to dismiss complaints which fail to state a claim for which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Under Rule 12(b)(6), the Court accepts Plaintiff's allegations as true and construe's the complaint in Plaintiff's favor.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

In considering a party's motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Id. at 679; Fed. Rule Civ. Proc. 8(a)(2).

Moreover, the Eleventh Circuit has recognized in analyzing a motion to dismiss under Rule 12(b)(6) that "[p]leadings must be something more than an ingenious academic exercise in the conceivable" and "unsupported conclusions of law or of mixed law and fact are not sufficient to withstand a dismissal under Rule 12(b)(6)." Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1271 (11th Cir. 2004) (internal quotations and citations omitted); see also Marsh v. Butler County, Ala., 268 F.3d 1014, 1036-1037 (11th Cir. 2001).

In deciding on a motion brought pursuant to Rule 12(b)(6), documents attached to a defendant's answer or motion to dismiss may be considered by the court without converting the motion into one for summary judgment. Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir. 1999); Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).  Moreover, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the

Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir.1997); Moon v. Goodyear Tire & Rubber Co., 519 F. App'x 620, 625 n. 2 (11th Cir. 2013). Additionally, "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." Maxcess, Inc. v. Lucent Technologies, Inc., 433 F.3d 1337, 1340 (11th Cir. 2005).

The Eleventh Circuit has held that when considering a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to dismiss to a motion for summary judgment. This is because such documents are capable of accurate and ready determination. Makro Capital of America, Inc. v. UBS AG, 372 F.Supp.2d 623, 627 (S.D. Fla. 2005) (citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1279-80 (11th Cir. 1999)); see also Universal Express, Inc. v. SEC, No. 05-13142, 2006 WL 1004381, at *1-*2 (11th Cir. 2006). Thus, the Court may take judicial notice of documents filed in other judicial proceedings, because they are public documents, without converting the motions to dismiss filed herein to motions for summary judgment. Universal

Express, 2006 WL 1004381, at *2; Young v. City of Augusta, Ga., 59 F.3d 1160, 1166 n. 11 (11th Cir.1995); In re Delta Resources, Inc., 54 F.3d 722, 725 (11th Cir.1995); United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994).

## B. THE COMPLAINT IS BARRED BY COLLATERAL ESTOPPEL.

Plaintiff' Complaint, which seeks to relitigate the reasons for his discharge, must be dismissed because the reasons for Plaintiff's termination of employment were previously litigated in Plaintiff's appeal in the State Court Proceeding of the GDOL's denial of unemployment compensation benefits.

The doctrine of collateral estoppel precludes re-litigation of an issue previously litigated and adjudicated on the merits between the same parties. Simmons v. State, 276 Ga. 525, 527, 579 S.E.2d 735, 737 (2003); Waldroup v. Greene County Hosp. Auth., 265 Ga. 864, 866-67, 463 S.E.2d 5, 7 (1995). Pursuant to 28 U.S.C. § 1738, federal courts must give preclusive effect to the judgment of a state court provided that two conditions are met: first, that the courts of the state from which the judgment emerged would give preclusive effect to the state court judgment; and second, that the litigants had a full and fair opportunity to litigate their claims and the prior state proceedings otherwise satisfied the applicable requirements of due process.  Kremer v. Chemical Constr. Corp., 456

U.S. 461, 465 (1982); Shields v. Bellsouth Advertising and Pub. Co. Inc., 228 F.3d 1284, 1288 (11th Cir. 2000).

## 1. Decisions of the GDOL and the Georgia Superior Courts as to the reasons for discharge are given preclusive effect.

A superior court's finding in an unemployment compensation appeal collaterally estops the employee from establishing in a subsequent wrongful termination action that he was terminated because of his protected status.   Shields v. Bellsouth Advertising and Pub. Co. Inc., 254 F.3d 986 (11th Cir. 2000). Moreover, "[i]t is well established that judicial affirmance of an administrative determination is entitled to preclusive effect ... [and][t]here is no requirement that judicial review must proceed *de novo* if it is to be preclusive." Gorin v. Osborne, 756 F.2d 834, 837 (11th Cir. 1985) (quoting Kremer, 456 U.S. at 480 n. 21).

In the State Court Proceeding, Plaintiff sought to overturn the GDOL decision denying him unemployment compensation benefits.  Following a hearing attended by Plaintiff and during which Plaintiff was represented by his counsel of record in this action, the Superior Court affirmed the GDOL's denial of unemployment compensation benefits by finding evidence supporting the GDOL's decision.  (Answer, Eighth Defense, Exhs. "A"-"D").  Specifically, after the reason for Plaintiff's termination was litigated through four (4) different levels of the GDOL, the GDOL made the determination (and the Superior Court affirmed based

on the certified GDOL record) that the reason for Plaintiff's termination was not due to his race, but was due to his willful failure to follow work rules when he put himself in the position to get arrested, missed work due to incarceration from that arrest, and made reference to his position and his work with the Superior Court and District Attorney to the arresting officer. (Answer, Eighth Defense, Exhs. "B" & C").

Thus, the termination decision that Plaintiff wants to relitigate in this action has already been litigated in state court. As a result, Georgia courts would give preclusive effect to the reasons for Plaintiff's termination as determined by the GDOL and affirmed by the Superior Court. See Shields v. Bellsouth Advertising and Pub. Co. Inc., 273 Ga. 774, 777, 545 S.E.2d 898, 901 (2001) ("In the arena of wrongful termination, the Georgia Court of Appeals has determined that collateral estoppel would bar relitigation of the reasons behind an employee's dismissal"); accord Langston v. Dept. of Corrections, 220 Ga.App. 445, 446, 469 S.E.2d 509, 510 (1996). Likewise, this Court should also give preclusive effect to the determination that Plaintiff's termination was not due to race, but was due to Plaintiff's misconduct. See Shields v. Bellsouth Advertising and Pub. Co. Inc., 254 F.3d 986 (11th Cir. 2000) (affirming district court's application of collateral estoppel to bar plaintiff's ADA claim based on Superior Court decision in

unemployment compensation case regarding reasons for plaintiff's termination);

Sadler v. Franklin County School Dist, 3:10-CV-26 CDL, 2011 WL 3347864 *7-

*9 (M.D. Ga. Aug. 3, 2011) (giving preclusive effect in an ADEA case to decision

of Superior Court affirming administrative decisions regarding reasons for

discharge); Barnes v. E.E.O.C., 5:12-CV-83 MTT, 2012 WL 3555096 *2 (M.D.

Ga. Aug. 16, 2012)  (giving preclusive effect in a Title VII case to decision of

Superior Court affirming Georgia Department of Labor unemployment

compensation benefits decision concerning reasons for discharge); Willis v.

Georgia Dep't of Natural Res., 5:05-CV-420 HL, 2007 WL 2908458  *4-*5 (M.D.

Ga. Sept. 29, 2007) (giving preclusive effect in a Title VII case after affirmance by

the Superior Court of the decision of administrative tribunal, and stating, "the

Georgia courts have already determined that Plaintiff was terminated for violating

Department policy and the Code of Ethics by misusing his law enforcement

authority when he placed a phone call to Mr. Mansfield as a favor for Mr. Aikens.

Georgia courts would therefore give preclusive effect to the reasons behind

Plaintiff's termination."); Baldwin v. Rents, 1:05-CV-120 WLS, 2007 WL 431088

*1 (M.D. Ga. Feb. 2, 2007) (giving preclusive effect to Title VII and § 1981 claims

that rely on allegations that race motivated Plaintiff's discharge where allegations

litigated before an administrative hearing officer of the Georgia Department of Labor and reviewed by the Superior Court of Dougherty County).

## 2.  Plaintiff had a "full and fair opportunity" to litigate his claims.

The record of proceedings before the GDOL demonstrates in abundance that Plaintiff had a "full and fair opportunity" to litigate the reason for his termination. Where a federal court is bound by the statutory directive of § 1738, state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law.  See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481 (1982).   That standard was met in this case.

At the hearing before the GDOL AHO, Plaintiff was represented by an attorney, had the opportunity to present and cross-examine witnesses, argue his case, and introduce documentary evidence concerning the reasons for his termination.  Moreover, Plaintiff had the opportunity to appeal the AHO's decision concerning the reason for his termination to the GDOL's Board of Review and to the Superior Court of Georgia.  The Superior Court conducted a hearing (during which Plaintiff was in attendance and his attorney presented argument on the issue of the reason for termination) and reviewed the GDOL record before rendering a decision.  (Answer, Eighth Defense, Exhs. "A"-"C").

Most notably, during Plaintiff's appeal process at the GDOL level, he filled out and submitted forms to the GDOL related to his discharge that provided him ample opportunity to state the reason he felt he was discharged.  (Answer, Eighth Defense, Exhs. "C" & "E").  One of those forms, the "Claimant's Information on Discharge" form, states the following under Item 3:

> "3.     What did your employer say you did that caused your discharge? Write down what you were told, even if you disagree with it.  Give details.
>
> **He placed me on Admin. leave to resolve a personal issue but could not wait any longer.**
>
> What dates did your employer say the above problems happened?
>
> **9-11-11**
>
> If you do not think the above reason was why you were discharged, give the reason you feel you were discharged. Explain in detail.
>
> <u>**I disagree with the time given only.  I disagree with not being able to perform my job.**</u>"

(<u>Id.</u>). (Emphasis added).

It is clear that Plaintiff was provided ample due process based on well-settled law.  <u>See</u> <u>Gorin v. Osborne</u>, 756 F.2d 834, 837-38 (11th Cir. 1985) (finding that a litigant who went through an adversarial administrative hearing that was "complemented by administrative as well as judicial review" was sufficient to

establish that plaintiff had a "full and fair opportunity" to litigate her claims).

Accordingly, Plaintiff is collaterally estopped from relitigating the reasons for his

discharge via his claims in this action.  Therefore, his Complaint alleging Title VII

and § 1981 claims contending that his race was the reason for his termination

should be dismissed.

## C. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

Before a potential plaintiff may sue for discrimination under Title VII, he

must first exhaust his administrative remedies.  Wilkerson v. Grinnell Corp., 270

F.3d 1314, 1317 (11th Cir. 2001), (citing Crawford v. Babbitt, 186 F.3d 1322, 1326

(11th Cir. 1999)).  The first step down this path is filing a timely charge of

discrimination with the EEOC. Wilkerson, *supra*; See Section 706(e) of Title VII

(42 U.S.C. § 2000e-5(e)(1); Alexander v. Fulton County, 207 F.3d 1303, 1332

(11th Cir. 2000).

For a charge to be timely in a non-deferral state such as Georgia, it must be

filed within 180 days of the last discriminatory act.  Wilkerson, *supra*.  The 180-

day filing period commences to run from the time the employer engages in the

alleged discriminatory act by making the termination decision and communicating

it or making it apparent to the complainant, rather than the effective date of the

termination or the time at which the consequences of the alleged discriminatory act

becomes most painful.   Chardon v. Fernandez, 454 U.S. 6 (1981); Wright v. AmSouth Bancorporation, 320 F.3d 1198, 1201 (11th Cir. 2003).   The EEOC regulations governing Title VII provide that "charges are timely filed if received by the Commission within 180 days from the date of the alleged violation." 29 C.F.R. § 1601.13(a)(1) (2006); Taylor v. Gen. Tel. Co., 759 F.2d 437, 440 (5th Cir. 1985) (finding that charge was untimely where it was mailed to the EEOC within 180 days but not filed until received by the EEOC on the 181st day after the alleged act of discrimination, and holding, "Our review of cases construing Title VII filing provisions leads inescapably to the conclusion that 'mailing' may not be construed as 'filing' for purposes of Title VII."); see also Welty v. S.F. & G. Inc., 605 F.Supp. 1548, 1558 (N.D. Ala. 1985) ("the fact that plaintiff mailed the charge on a date prior to May 31 receipt date does not make the mailing date the operative date for the purpose of determining whether a charge has been timely filed.").

Plaintiff's Complaint alleges that he was notified of his termination on September 27, 2011.  (Doc. 1,¶ 14; see also Answer, Exh. "I").  As such, he was required to file his charge of discrimination premised on his termination within 180 days of that date, or by March 25, 2012.  Plaintiff's charge of discrimination was not filed until it was file-stamped as "Received" by the EEOC on March 27, 2012, 182 days after Plaintiff was notified of his termination.  (Answer, ¶ 27, Exhs. "K"-

"M").   Because Plaintiff's charge was untimely filed, his Title VII claim must be dismissed as a matter of law for failure to exhaust his administrative remedies prior to filing suit.  Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001).

## D. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM BECAUSE THE COUNTY WAS NOT HIS EMPLOYER AS A MATTER OF LAW.

In order to state a claim against the County with regard to Plaintiff's Title VII and 42 U.S.C. § 1981 claims, the County must have been Plaintiff's employer with regard to the termination at issue.  Under Title VII, Plaintiff may only prevail against an "employer" who intentionally engaged in or is intentionally engaging in an unlawful employment practice.  Goldsmith v. City of Atmore, 996 F.2d 1155, 1162 (11th Cir. 1993); Lee v. Mobile County Comm'n, 954 F. Supp. 1540, 1545 (S.D. Ala. 1995) aff'd, 103 F.3d 148 (11th Cir. 1996).  While there are many tests to determine whether an entity is an employer under various federal employment discrimination statutes, the Eleventh Circuit has identified one common inquiry: "all of them seek to determine who (or which entity) is in control of the fundamental aspects of the employment relationship that gave rise to the claim." Lyes v. City of Riviera Beach, Fla., 166 F.3d 1332, 1345 (11th Cir. 1999); Robbins v. Chatham County, 863 F.Supp.2d 1367, 1374-75 (S.D. Ga. 2012).  Under this inquiry, the lack of authority or control possessed by one entity over another's employment decisions precludes a finding of liability because the entity lacking

21

control does not meet the definition of an employer under the requisite status. Robbins, 863 F.Supp.2d at 1375.

Plaintiff's claim brought pursuant to § 1983 for a violation of his § 1981 right to be free from discrimination in employment is not based on anything other than alleged constitutional and statutory violations in the employment relationship. As a result, like his claim under Title VII, the County's liability hinges on whether the County has control over the employment decision at issue. A county or municipality is only liable under § 1983 for those "acts for which the county is actually responsible." City of Canton v. Harris, 489 U.S. 378, 385 (1989); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Marsh v. Butler County, 268 F.3d 1014, 1027 (11th Cir.2001) (en banc).

At all times relevant to his claims, Plaintiff was employed with the Superior Courts of the Piedmont Judicial Circuit under the direct supervision of Judge Mingledorff, a duly elected Superior Court Judge presiding in the Piedmont Judicial Circuit. The Georgia Constitution limits a county's authority over personnel decisions made by Superior Court Judges. Ga. Const. Art. IX, § 2, ¶ 1(c)(7) (prohibiting county action that would affect any court or the personnel thereof). Superior Court Judges are vested by the Georgia constitution with the judicial power of the State (Ga. Const. Art. VI, § 1, ¶ 1) and are defined as "state

22

officials" for compensation purposes. O.C.G.A. § 45-7-4(a)(20); <u>Freeman v.</u> <u>Barnes</u>, 282 Ga. App. 895, 897, 640 S.E.2d 611, 614 (2006).  Finally, Superior Court Judges are vested with authority under Georgia statutes to employ personnel and control the authority, powers, duties and responsibilities of those employees. <u>See</u> O.C.G.A. §§ 15-6-25 and 15-6-27).

Judge Mingledorff was Plaintiff's direct supervisor who controlled his authority, duties, responsibilities and powers, controlled Plaintiff's work schedule and directed his work assignments.  (Answer, ¶ 6, Exhs. "F" & "I").  Judge Mingledorff (who was the decision-maker in hiring Plaintiff), was the ultimate decision-maker responsible for personnel decisions pertaining to Plaintiff, including his termination.  (<u>Id.</u>).  Plaintiff's position, which was not subject to or covered under the County's civil service system, was not subject to the County's control, supervision or authority.   The County's only role in Plaintiff's employment was to pay approximately 60% of his salary.

As a result of these facts which are demonstrated through the pleadings and as a matter of law, the County's role in Plaintiff's employment (where Plaintiff was employed by the Superior Court under the control and supervision of Judge Mingledorff) is not nearly enough to establish that the County controls the fundamental aspects of Plaintiff's employment relationship such that the County

can be liable as an "employer" under Title VII or Section 1983 with respect to the alleged discriminatory termination decision made by Judge Mingledorff.  See, e.g., Robbins v. Chatham County, 863 F.Supp.2d 1367, 1374-75 (S.D. Ga. 2012) (holding that Chatham County lacks authority and control over the employment decision of the District Attorney); see also Thomas v. Cobb County Sheriff's Office, 1:06-CV-1883-JEC, 2010 WL 431468 *5-*6 (N.D. Ga. Feb. 4, 2010); Watts v. Bibb County, 5:08-CV-413 CAR, 2010 WL 3937397 *10-*11 (M.D. Ga. Sept. 30, 2010); Lee v. Mobile Cnty. Comm'n, 954 F. Supp. 1540 (S.D. Ala. 1995) aff'd, 103 F.3d 148 (11th Cir. 1996); Society of Separationists, Inc. v. Herman, 939 F.2d 1207, 1215 n. 31 (5th Cir.1991) (Judge held to be acting for State, not County, with respect to personnel decisions); Taylor v. Bartow County, 860 F.Supp. 1526, 1536 (N.D. Ga. 1994).

As a matter of law, the County was not the employer of Plaintiff and does not have substantial control or authority over the personnel decision made by Judge Mingledorff.  Moreover, also as a matter of law, Judge Mingledorff is not a final policymaker for the County as a result of his personnel decision.  Therefore, the Complaint must be dismissed.

## E. PLAINTIFF'S PUNITIVE DAMAGES CLAIMS MUST BE DISMISSED.

It is well-established that the County is not subject to liability for punitive damages as a matter of law with regard to Plaintiff's Complaint.  City of Newport v. Fact Concerts, 453 U.S. 247 (1981); 42 U.S.C. § 1981a(b)(1); Colvin v. McDougall, 62 F.3d 1316, 1319 (11th Cir. 1995); Walters v. City of Atlanta, 803 F.2d 1135, 1148 (11th Cir. 1986); Walker v. Ford Motor Co., 684 F.2d 1355, 1364 (11th Cir. 1982).  Thus, Plaintiff's punitive damages claims against the County must be dismissed.

## CONCLUSION

For any of the foregoing independent reasons, Defendant's Motion to Dismiss should be granted and Plaintiff's Complaint should be dismissed against the County in its entirety.

Respectfully submitted this 20th day of February 2014.

**JARRARD & DAVIS, LLP**
s/ Kenneth P. Robin
Angela E. Davis
Georgia Bar No. 389550
Kenneth P. Robin
Georgia Bar No. 609798

105 Pilgrim Village Drive, Suite 200
Cumming, Georgia 30040          Attorneys for Defendant
(678) 455-7150 (telephone)
(678) 455-7149 (facsimile)          adavis@jarrard-davis.com
                                     krobin@jarrard-davis.com

25

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

SAMMY HALE, JR.                )
                               )
    Plaintiff,            )      CIVIL ACTION FILE
                               )      NO. 2:13-cv-00228-RWS
v.                             )
                               )
BARROW COUNTY,                 )
                               )
    Defendant.            )

## CERTIFICATE OF SERVICE AND FONT CERTIFICATION

I hereby certify that, in accordance with LR 5.1A (N.D.Ga.), I have this date

electronically filed the within and foregoing **Brief in Support of Defendant's**

**Motion to Dismiss** in the above-styled civil action with the Clerk of Court by

using the Court's CM/ECF system, which will automatically send email

notification of such filing to the following counsel of record for Plaintiff in this

matter:

Gordon S. Johnston
Stuart & Johnston, LLC
3343 Peachtree Rd., NE, Suite 530
Atlanta, GA 30326
gjohnston@stuartandjohnston.com

I further certify that the above and foregoing **Brief in Support of Defendant's Motion to Dismiss** meets the requirements set forth in L.R. 5.1C (N.D.Ga.) and has been prepared using Times New Roman 14-point font.

This 20th day of February, 2014.

**JARRARD & DAVIS, LLP**

/s Kenneth P. Robin
KENNETH P. ROBIN
Georgia Bar No. 609798
krobin@jarrard-davis.com

105 Pilgrim Village Drive
Suite 200
Cumming, Georgia  30040          Attorneys for Defendant Barrow County
(678) 455-7150 – telephone
(678) 455-7149 – facsimile