IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

SAMMY HALE, JR.,     :
           :
   Plaintiff,    :
           :
v.          :  CIVIL ACTION NO.
           :  2:13-CV-00228-RWS-JCF
CURRIE M. MINGLEDORFF, II in his :
individual capacity, and BARROW :
COUNTY,       :
           :
   Defendants.  :

**FINAL REPORT AND RECOMMENDATION**

   This case is before the Court on Defendants' motions to dismiss Plaintiff's Amended Complaint. (Docs. 18, 29). For the reasons discussed below, it is **RECOMMENDED** that Defendants' motions be **GRANTED** and Plaintiff's Amended Complaint be **DISMISSED.**

**Procedural History**

   On October 2, 2013, Plaintiff filed a Complaint against Barrow County, Georgia alleging that Defendant terminated him from his position as Specialty Courts Director because of his race (African-American), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. (Doc. 1). Barrow County filed an answer (Doc. 6), with attached exhibits (Docs. 6-1 through 6-14), and also filed a motion to dismiss Plaintiff's Complaint

1

pursuant to FED. R. CIV. P. 12(b)(1) and (b)(6).[1]   Rather than respond to Defendant's motion to dismiss, Plaintiff filed an Amended Complaint (Doc. 16) with attached exhibits (Docs. 16-1 through 16-5).[2]   In his Amended Complaint, Plaintiff alleged that Barrow County terminated his employment because of his race in violation of Title VII, and he also asserted a claim of race discrimination pursuant to 42 U.S.C. § 1981, made actionable through 42 U.S.C. § 1983, against Defendant Currie M. Mingledorff, II, the Presiding Judge for the Specialty Courts in the Piedmont Judicial Circuit.  (*See* Doc. 16).  Barrow County filed an Answer to the Amended Complaint[3] (Doc. 17) and a motion to dismiss pursuant to Rule 12(b)(6) (Doc. 18).  In lieu of an answer, Defendant Mingledorff filed a motion to dismiss Plaintiff's Amended Complaint (Doc. 29) with supporting exhibits (Docs. 30 and 30-1 through 30-3).  Plaintiff filed a response to Barrow County's motion to dismiss (Doc. 33), but he did not file a response to Defendant Mingledorff's motion.  Barrow County filed a reply brief.  (Doc. 35).  Briefing is complete, so the undersigned now considers the merits of Defendants' motions.

## Legal Standards For Motions To Dismiss

The Court must first address the significance of Barrow County's

---

[1]  Barrow County later filed an amended motion to dismiss to correct a typographical error.  (*See* Doc. 10).

[2]  In light of the Amended Complaint, the Court denied Defendant's motion amended motion to dismiss as moot.  (*See* Doc. 27).

[3]  Barrow County later amended its answer to attach a verification.  (*See* Doc. 22).

simultaneous filing of an answer to Plaintiff's Amended Complaint (Doc. 17) and a a motion to dismiss pursuant to Rule 12(b)(6) (Doc. 18). Rule 12(b) provides that "[a] motion asserting any of [the] defenses" listed in that Rule, including a 12(b)(6) motion to dismiss for failure to state a claim, "must be made *before* pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b) (emphasis added). Barrow County asserted in its Answer all of the reasons it now seeks to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6), including Plaintiff's failure to state a claim, its assertion that it was not Plaintiff's employer, Plaintiff's failure to timely file an EEOC Charge, and collateral estoppel. (*See* Doc. 17). Therefore, Barrow County's motion to dismiss, filed after the Answer (yet on the same day) "is technically untimely." *Keller v. Strauss*, No. 1:10-CV-3282-RWS, 2011 U.S. Dist. LEXIS 64403, at *7 (N.D. Ga. 2011), *aff'd* 480 Fed. Appx. 552 (11th Cir. 2012). "However, while the motion may be untimely as a motion to dismiss, the defense[s] raised [are] appropriate . . . for a judgment on the pleadings" pursuant to Rule 12(c).[4] *Id.* Furthermore, "[a] motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *Roma Outdoor Creations, Inc. v. City of Cumming*, 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008)

---

[4] "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "Judgment on the pleadings is appropriate when no issues of material fact exist and the movant is entitled to judgment as a matter of law." *Regions Bank v. Homes by Williamscraft, Inc.*, No. 1:09-CV-91-TWT, 2009 U.S. Dist. LEXIS 103574, at *3 (N.D. Ga. Nov. 6, 2009).

(internal quotation omitted).   Therefore, the undersigned construes Barrow County's motion to dismiss as a motion for judgment on the pleadings.  *See, e.g.*, *Whitehurst v. Wal-Mart Stores East, L.P.*, 329 Fed. Appx. 206, 208 (11th Cir. 2008) (construing a motion to dismiss, filed after the answer, as a motion for judgment on the pleadings); *Keh v. Americus-Sumter Cnty. Hosp. Auth.*, No. 1:03-cv-68-2(WLS), 2006 U.S. Dist. LEXIS 15668, at *6-8 (M.D. Ga. Mar. 30, 2006) (treating motions to dismiss which were filed contemporaneously with answers as motions for judgment on the pleadings "[s]ince there is no substantive difference, but only a procedural distinction between a motion to dismiss and a motion for judgment on the pleadings").

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   FED R. CIV. P. 8(a)(2). That standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  To state a claim that can survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79.  A complaint is not sufficient "if it tenders [only] 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). To be plausible, a complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.  Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Boyd v. Peet*, 249 Fed. Appx. 155, 157 (11th Cir. 2007) (unpublished decision) (affirming the district court's order granting a motion for judgment on the pleadings and explaining that "[t]he complaint's allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff's complaint should be dismissed").

## **Factual Background**[5]

The Court notes that the parties rely on exhibits attached to the Amended Complaint (*see* Docs. 16-1 through 16-5), exhibits attached to Barrow County's Answer to Plaintiff's original Complaint (*see* Docs. 6-1 through 6-14), which have been incorporated into its Answer to Plaintiff's Amended Complaint (*see* Doc. 17

---

[5] Unless otherwise specified, references are to the docket number and pagination on the Court's CM-ECF filing system.

at 5-7, 19-22, 28-31, 35-36), and exhibits submitted in support of Defendant Mingledorff's motion to dismiss (*see* Docs. 30 and 30-1 through 30-3).   In particular, the parties cite to documents concerning (a) the criminal proceedings against Plaintiff that lead to his termination, (b) Plaintiff's termination, (c) Plaintiff's application for unemployment benefits from the Georgia Department of Labor after his termination, and (d) his petition for judicial review of the denial of his application filed in the Superior Court of Barrow County.

In general, "[w]hen the court considers matters outside the pleadings, . . . the Rule 12(b)(6) motion converts into a Rule 56 motion for summary judgment," which requires the court to notify the parties and given them ten days to submit additional evidence and arguments in support of or in response to the motion. *Starship Enters. of Atlanta, Inc. v. Coweta Cnty., Ga*, 708 F.3d 1243, 1252 n. 13 (11th Cir. 2013).   The court may, however, consider documents attached to the pleadings and motion without converting the motion to a motion for summary judgment if those documents are central to the complaint and not in dispute, i.e., the parties do not challenge the authenticity of the documents.   *See Horsley v. Feldt*, 304 F. 3d 1125, 1134-35 (11th Cir. 2002); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); *Okim v. Bank of Am.*, No. 1:12-cv-01759-TWT-GGB, 2012 U.S. Dist. LEXIS 168788, at *7 (N.D. Ga. Oct. 25, 2012); *Jerome v. Marriott Resid. Inn Barcelo Crestline/AIG*, No. 1:04-CV-2690-WSD, 2005 U.S.

Dist. LEXIS 47644, at *6 (N.D. Ga. Mar. 25, 2005).

In this case, Plaintiff includes allegations in his Amended Complaint about the criminal proceedings that lead to his termination, as well as his filing for unemployment compensation benefits with the Georgia Department of Labor ("GDOL"), the administrative hearing that occurred in connection with his application, his appeal of the hearing officer's adverse decision to the Board of Review, his appeal of the Board's adverse decision to the Superior Court of Barrow County, and the Superior Court's Order on that appeal. (*See* Doc. 16 at ¶¶ 17-23, 28-34). Thus, the parties' exhibits are referred to in and are central to Plaintiff's Amended Complaint. *Cf Starship Enters.*, 708 F.3d at 1252 n. 13 (noting that "a court may consider documents attached to the motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim," but finding that the district court's consideration of documents from a prior case automatically converted the motion to one for summary judgment "[b]ecause [the plaintiff] did not refer to the Superior Court petition or order in its complaint"). Moreover, the parties have not disputed the authenticity of the documents or objected to the Court's consideration of them in deciding Defendants' motions. Accordingly, the undersigned finds that the Court may consider the documents attached to Plaintiff's Amended Complaint (*see* Docs. 16-2 through 16-5), Defendant Barrow County's Answer (*see* Docs. 6-2 through 6-14), and Defendant

Mingledorff's motion (*see* Docs. 30 and 30-1 through 30-3), without converting Defendants' motions into motions for summary judgment.  The undersigned has taken the following facts, for purposes of deciding Defendants' motions only, from those documents and from Plaintiff's allegations in his Amended Complaint (Doc. 16).

Plaintiff was hired by Barrow County on November 28, 2005 and was initially employed in the Barrow County District Attorney's Office as the Pretrial Diversion Coordinator.  (Doc. 16 at ¶¶ 8, 11).  He remained employed in that position until April 30, 2010 when he became the Specialty Courts Director.  (*Id.* at ¶ 14).  Judge Currie M. Mingledorff, a Barrow County Superior Court Judge, was the Presiding Judge of the Specialty Courts Division.  (*Id.* at ¶ 6).  As Director, Plaintiff was responsible for directing, planning, administering, and coordinating the daily activities of the Specialty Courts Programs, and his position also involved the supervision of criminal offenders to ensure that they complied with the requirements of the Specialty Court programs, such as the Pretrial Diversion Program, the Bad Check Program, the Drug Court, Mental Health Court, and DUI Court.  (*See* Doc. 6-6).

On September 11, 2011, Plaintiff was arrested by the Atlanta Police Department in a restaurant based on an accusation of sexual battery by a female patron.  (Doc. 16 at ¶ 17).  While he was being arrested, Plaintiff and his cousin

made reference to Plaintiff's position at the Superior Court and to his work with the District Attorney.  (*Id.* at ¶ 31; Doc. 6-3 at 23-27, 69-70, 72).  Plaintiff missed work on September 12, 2011 as a result of his arrest and incarceration, and first contacted Judge Mingledorff about his arrest on the morning of September 13, 2011 after bonding out of the Fulton County Jail.  (Doc. 16 at ¶ 17; Doc. 6-3 at 37, 49, 72-74).

On September 16, 2011, Judge Mingledorff and District Court Administrator Tracey Bement notified Plaintiff orally and in writing that he was being placed on unpaid administrative leave pending the adjudication of the charges.  (Doc. 16 at ¶¶ 18- 19; Doc. 6-8).  Judge Mingledorff wrote in relevant part:

> It has come to our attention that you were recently arrested and incarcerated for the charge of sexual battery.  We are mindful that you have not been adjudicated guilty of this crime and that you strongly profess that you are innocent of this charge.  Nonetheless, this development threatens to undermine the integrity and importance of your position as Specialty Courts Director and may reflect conduct that is unbecoming of an executive employee of the Piedmont Judicial Circuit.  Moreover, we find that the pendency of the criminal charge will impede and interfere with your ability to satisfactorily perform your job.
> As a result, we feel that we have no choice but to place you on unpaid administrative leave pending the adjudication of this matter.  However, the Circuit may elect to terminate your employment should it be deemed at any point to be in the best interest of the Circuit.

(Doc. 6-8).

On September 26, 2011, a probable cause hearing was held before a Fulton County Magistrate Judge on the criminal charges against Plaintiff, and the charges

were bound over for trial at the conclusion of the hearing.  (Doc. 16 at ¶ 20).

On or about September 27, 2011, Judge Mingledorff, Mr. Bement, and other individuals met and decided to terminate Plaintiff.  (*Id.* at ¶ 22).  Judge Mingledorff and Mr. Bement notified Plaintiff in person and in writing that his employment was terminated effective September 30, 2011.  (Doc. 16 at ¶ 23; Doc. 6-3 at 77-78; Doc. 6-9).  In his September 27, 2011 termination letter, Judge Mingledorff wrote in relevant part:

> Please allow this correspondence to serve notice of your termination, effective Friday, September 30, 2011.  We are providing this notice to you in connection with a pre-dismissal conference.
> It has come to our attention that a preliminary hearing was held on September 26, 2011, in connection with your recent arrest and incarceration on the charge of sexual battery.  We understand that the alleged victim appeared at said hearing and that the judge bound the charge over for trial.
> Although we are mindful that you have not been adjudicated guilty of this crime, the fact that this has been bound over for trial will not allow for a speedy resolution of this matter as we had hoped.  Because the Specialty Courts Director position is one of integrity and importance, we cannot permit conduct that may be perceived as unbecoming of an executive employee of the Piedmont Judicial Circuit (the "Circuit").  Additionally, the pendency of the criminal charge against you will prevent you from satisfactorily performing your job.  To that end, we feel we are left with no other choice than to terminate your employment, as we deem it to be in the best interest of the Circuit.

(Doc. 6-9).

Following his termination, Plaintiff filed a claim for unemployment benefits with the GDOL, which the claims examiner denied on October 19, 2011, finding

that his employer fired him "for violating work rule conduct policy due to criminal charges of sexual battery," and that Plaintiff had been "made aware of [his] employer's requirements and did not follow them." (Doc. 6-3 at 145). Plaintiff appealed the denial to the GDOL's Administrative Hearing Officer, and a hearing on that appeal was held on December 16, 2011. (Doc. 16 at ¶ 30; Doc. 6-3 at 10 through 92). Plaintiff and Barrow County were represented by counsel at the hearing, at which Atlanta Police Department Loren Alston testified about Plaintiff's arrest, Court Administrator Mr. Bement testified about the reasons for his termination, and Plaintiff testified about the events leading to his termination and the reasons he disagreed with the Claims Examiner's decision to disqualify him from unemployment benefits. (*See* Doc. 6-3 at 10 through 92).

Specifically, Mr. Bement testified that Plaintiff was terminated because of his arrest and incarceration in violation of the County's policy prohibiting "conduct that interferes with the operations of Barrow County brings discredit to Barrow County or is offensive to Supervisors, co-workers or the public[.]" (*See id.* at 33-34). Mr. Bement explained that Defendants decided to terminate Plaintiff because his position is a "position of public trust" that "deal[s] with offenders in the Criminal Justice System" who are held "to a very high level of conduct," including not being charged with criminal misconduct. (*Id.* at 35). Mr. Bement also testified that Plaintiff violated policy by not coming to work the day after his arrest while he

was in jail, and by referencing his work for the court and the District Attorney's office during his arrest. (*See id.* at 49-52). Plaintiff testified that he disagreed with the termination because he did not commit the charged offense, he did not intentionally fail to come to work the day after his arrest, Defendants did not investigate the allegations against Plaintiff, and they did not afford him due process. (*Id.* at 78-80).

On December 16, 2011, the Hearing Officer issued a decision affirming the October 19, 2011 decision that Plaintiff was disqualified from receiving unemployment compensation benefits. (*See* Doc. 6-3 at 7-8). The Hearing Officer found that Plaintiff:

> violated the standard of conduct of which an employer has the right to expect when he was arrested and then subsequently referenced his position with the named employer. The employer's policy provides that absence due to an arrest as well as the use of official position for personal benefits, profit or advantage, is prohibited. The hearing officer finds that the claimant[']s actions placed him at fault in the separation. Therefore, a disqualification is required.

(*Id* at 8). Plaintiff appealed the Hearing Officer's decision to the GDOL Board of Review. (*See* Doc. 6-3 at 99). In the appeal Plaintiff argued, through counsel, that the Hearing Officer improperly relied on hearsay testimony, that the Hearing Officer (and Defendants) improperly relied on the fact of the arrest, rather than proof that Plaintiff actually committed the charged offense, and Defendants improperly added reasons for the termination at the unemployment hearing that

had not been previously disclosed, i.e., Plaintiff's failure to come to work the day after his arrest and his reference to working for the court system and DA's office during his arrest. (*See id.* at 99-102). On January 31, 2012, the Board adopted the findings of the Hearing Officer and affirmed the Hearing Officer's decision. (Doc. 16 at ¶ 33; Doc. 6-3 at 5). Plaintiff moved for reconsideration (*see* Doc. 6-3 at 98), but the Board denied that motion on March 13, 2012 (Doc. 6-3 at 3).

Plaintiff then appealed the GDOL's denial of unemployment benefits to the Superior Court of Barrow County on March 26, 2012. (Doc. 16 at ¶ 34; Doc. 6-4 at 1-4). Superior Court Judge G. Grant Brantley, a Senior Superior Court Judge from the Cobb Judicial Circuit[6], conducted a hearing on May 28, 2013, attended by Plaintiff and counsel for Plaintiff and Defendants, at which hearing counsel presented oral argument. (Doc. 16 at ¶ 34; Doc. 6-2). Judge Brantley also issued a written Order dated June 4, 2013 in which he affirmed the GDOL's denial of unemployment compensation benefits. (*See* Doc. 6-1). Judge Brantley indicated that in making his decision, he considered the parties' oral argument at the hearing, Plaintiff's Petition for Judicial Review, and the transcript of the GDOL December 16, 2011 hearing. (*Id.* at 2). In the meantime, on September 7, 2012, Fulton County nol prossed the sexual battery charge against Plaintiff. (Doc. 16 at ¶ 38).

---

[6] The judges of the Piedmont Judicial Circuit recused themselves from the case since Plaintiff was employed by Barrow County as the Specialty Courts Director, and he was terminated by a Superior Court Judge of that Circuit. (*See* Doc. 6-4 at 6).

## Discussion

Barrow County argues that Plaintiff's Amended Complaint should be dismissed because: (1) it is barred by collateral estoppel; (2) it fails to state a claim on which relief can be granted; (3) Plaintiff failed to timely exhaust his administrative remedies; and (4) Barrow County was not Plaintiff's employer as a matter of law.  (*See* Doc. 18-1 at 13, 19, 21; Doc. 35 at 1, 5, 9).  Defendant Mingledorff also contends that Plaintiff's Amended Complaint should be dismissed for failure to state a claim and because it is barred by collateral estoppel.  (*See* Doc. 29-1 at 4-8).  In addition, he contends that Plaintiff's § 1981/1983 claim against him is barred by qualified immunity.  (*Id.* at 8-11).  As discussed below, the undersigned finds that Plaintiff's Amended Complaint should be dismissed because his allegations are barred in part by collateral estoppel, and because he has failed to state a claim of race discrimination under Title VII and § 1981/1983. Therefore, the undersigned does not reach Defendants' alternative arguments concerning administrative exhaustion, Barrow County's status as Plaintiff's employer, and qualified immunity.

## I.   Plaintiff's Failure To Respond To Defendant Mingledorff's Motion

This Court's Local Rules required Plaintiff to either oppose or respond to Defendant Mingledorff's motion within 17 days, including time for service of the response.  *See* LR 7.1B, NDGa.; *see also* FED. R. CIV. P. 6(d).  Plaintiff did not

respond, so Mingledorff's motion to dismiss is therefore unopposed.  *See Simpson v. Countrywide Home Loans*, Civ. Act. No. 1:10-CV-0224-CAM-ECS, 2010 U.S. Dist. LEXIS 81389, at *9 (N.D. Ga. Apr. 26, 2010) (claims in a motion to dismiss that are not addressed by plaintiff are deemed unopposed), *adopted by* 2010 U.S. Dist. LEXIS 81384 (N.D. Ga. Aug. 11, 2010); *see also* LR 7.1B ("Failure to file a response shall indicate that there is no opposition to the motion.").

An unopposed motion to dismiss is not automatically due to be granted: "rather, the Court is still required to consider the merits of the motion." *Jackman v. Hasty*, No. 1:10–CV–2485–RWS, 2012 U.S. Dist. LEXIS 57893, at *5 (N.D. Ga. Apr. 24, 2012); *see also Davis v. Bank of America, N.A.*, No. 1:11–cv–4552–JEC–RGV, 2012 U.S. Dist. LEXIS 128290, at *6 (N.D. Ga. Sept. 10, 2012) (the moving party does not automatically prevail on an unopposed motion to dismiss).  Accordingly, the undersigned still must determine whether dismissal is proper.

## II.  <u>Collateral Estoppel</u>

Barrow County argues that "Plaintiff's Complaint, which seeks to relitigate the reasons for his discharge, must be dismissed because the reasons for Plaintiff's termination of employment were already litigated in Plaintiff's appeal in the State Court Proceeding of the GDOL's denial of unemployment benefits." (Doc. 18-1 at 13).  Similarly, Defendant Mingledorff contends that collateral estoppel precludes

Plaintiff "from re-adjudicating the reason for his termination because it was decided through [his] unemployment compensation proceedings." (Doc. 29-1 at 6-7).

"[U]nder 28 U.S.C. § 1738[7], federal courts must give preclusive effect to the judgment of a state court whenever the courts of the state from which the judgment emerged would do so, provided that the litigants had a 'full and fair opportunity' to litigate their claims and the prior state proceedings satisfied 'the applicable requirements of due process.' " *Gorin v. Osborne*, 756 F.2d 834, 836-37 (11th Cir. 1985) (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 480-82 (1982)). "In considering whether to give preclusive effect to state-court judgments under res judicata or collateral estoppel, the federal court must apply the rendering state's law of preclusion." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011).

Here, "[i]t is clear that Georgia courts would accord preclusive effect to the decision of an administrative tribunal as affirmed by the Superior Court." *Gorin*, 756 F.2d at 837. Furthermore, the prior state proceedings provided Plaintiff with a full and fair opportunity to litigate his claims, and satisfied the "applicable requirements of due process." *See id.*; *see also Shields v. BellSouth Advert. &*

---

[7] 28 U.S.C. § 1738 provides in relevant part that "the . . . judicial proceedings of any court of any such State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law and usage in the courts of such State . . . ."

*Publ'g Co.*, 228 F.3d 1284, 1288-89   (11th Cir. 2000) (explaining Georgia's unemployment benefits compensation scheme and finding that its administrative procedures, including a hearing before an administrative hearing officer, review by the Board of Review, and judicial review by the Superior Court, provided the plaintiff "a 'full and fair opportunity' to pursue his wrongful termination claims," and satisfied " 'the applicable requirements of [federal] due process' " (quoting *Goren*, 756 F.2d at 836).  The Court must now consider whether and to what extent collateral estoppel bars Plaintiff's claims.

"In Georgia, the collateral estoppel doctrine precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies."  *Shields v. Bellsouth Adver. & Publ'g Corp.*, 273 Ga. 774, 545 S.E. 2d 898, 900 (Ga. 2001).  "Like res judicata, collateral estoppel requires the identity of the parties or their privies in both actions."  *Id.*  "However, unlike res judicata, collateral estoppel does not require identity of the claim – so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim."  *Id.*  "Additionally, collateral estoppel precludes only those issues that were either actually litigated in a previous action or by necessity had to have been decided in order for the previous judgment to have been rendered."  *Id.* at 901.  "Under Georgia law, a party relying on collateral estoppel must

demonstrate that (1) an identical issue, between identical parties (or their privies), (2) was actually litigated and (3) necessarily decided, (4) on the merits in a final judgment, (5) by a court of competent jurisdiction." *Mendelson v. Southeast Mortg. of Ga., Inc.*, No. 1:11-CV-03155-TWT-GGB, 2012 U.S. Dist. LEXIS 116373, at *17 (N.D. Ga. July 26, 2012).

It is undisputed that the parties involved in this case and the previous case are identical: Plaintiff "does not contest that the parties here and in the unemployment proceeding are identical." (Doc. 33 at 5). Further, the Superior Court of Barrow County is undoubtedly a court of competent jurisdiction. *See 2025 Emery Highway, L.L.C. v. Bibb Cnty.*, 377 F. Supp. 2d 1310, 1362 (M.D. Ga. 2005) ("Undoubtedly, [a Georgia] Superior Court is a court of competent jurisdiction."). Moreover, the decision of the Superior Court's decision affirming the denial of unemployment compensation benefits was a decision on the merits in a final judgment.

The critical question the Court must answer is whether Defendants have shown that the issues that were actually litigated and decided in the previous action are identical to the issues in this case. Defendants contend that the issue that was litigated and decided in Plaintiff's unemployment benefits proceeding was the issue of the reason for his termination, and therefore, he cannot now re-litigate the reasons for his termination. (*See* Doc. 18-1 at 13; Doc. 29-1 at 6). Plaintiff

18

counters the issues differ because the issue in this case is "whether the plaintiff was treated less favorably than similarly situated employees outside of his protected class," which "requires the court evaluate if employees accused of the same or similar conduct are disciplined in different ways."  (Doc. 33 at 6-7).

Two Georgia cases cited by Defendants, *Shields v. Bellsouth Advertising & Publishing Corporation*, 273 Ga. 774, 545 S.E. 2d 898, 900 (Ga. 2001), and *Langton v. Department of Corrections*, 220 Ga. App. 445, 469 S.E.2d 509 (Ga. Ct. App. 1996), lend support for their contentions that the reasons for Plaintiff's termination have already been litigated, and therefore, he is estopped from now challenging the cause for his termination.  In *Shields*, the Georgia Supreme Court held, "A judicial decision based upon administrative benefit hearings that determines the reasons for an employee's termination precludes relitigation of the causality issue in subsequent proceedings," and therefore "collateral estoppel bars revisiting the alleged reasons behind Shields' dismissal."  545 S. E. 2d at 901.  In reaching that conclusion, the court relied heavily on *Langton*: "In the arena of wrongful termination, the Georgia Court of Appeals has determined that collateral estoppel would bar relitigation of the reasons behind an employee's dismissal." 545 S.E. 2d at 901 (citing *Langton*).  "The Langton court held that, since the initial unemployment benefits litigation fully explored the reasons behind the plaintiff's dismissal, any inconsistent judicial decision would be barred by the doctrine of

collateral estoppel.  As such, Langton's claim was estopped from relitigation." *Id.* (citing *Langton*, 469 S.E. 2d at 510).  Yet *Shields* and *Langton* are both materially distinguishable from this case, however.

First, in *Langton* the plaintiff claimed during her unemployment benefits proceedings that her termination "violated several constitutional and statutory rights," and the superior court affirmed the denial of benefits, specifically finding that " 'no constitutional or statutory impropriety was related to the plaintiff's discharge." *Shields*, 545 S.E.2d at 901 (quoting *Langton*, 469 S.E.2d at 510). Similarly, in *Shields* the plaintiff contended during his unemployment benefits hearings, and "[a]t each level of procedural review," that he was terminated due to his HIV-positive status, and "[t]he superior court addressed and rejected Shields' discrimination claim, holding specifically that 'no evidence' demonstrated BAPCO's discriminatory motivation." *Id.*  The court in *Shields* found that the plaintiff's contention in that litigation that he was fired due to his HIV-positive status, "was considered and specifically rejected by the superior court," and therefore answered in the affirmative the Eleventh Circuit's certified question:

> Under the circumstances of this case, would a Superior Court's finding in an unemployment compensation appeal that there is no evidence the decisionmaker who terminated the employee knew of his protected status and no evidence that his protected status motivated his discharge, collaterally estop the employee as a matter of Georgia law from establishing in a subsequent wrongful termination lawsuit in state court that he was terminated because of his protected status?

*Id.*; *see also Shields v. BellSouth Adver. & Publ'g Co.*, 254 F.3d 986, 986-87 (11th Cir. 2001). Thus, in *Shields* and *Langton*, the plaintiff raised the issue of whether the termination violated his or her constitutional or statutory rights, and that issue was actually litigated and decided upon by the state court. In this case, by contrast, the record does not show that Plaintiff raised the issue of disparate treatment based on race or that that issue was actually litigated.

Other cases cited by Barrow County—in support of its proposition that "this Court should . . . give preclusive effect to the determination that Plaintiff's termination was not due to race, but was due to Plaintiff's misconduct"—are similarly distinguishable from this one. *See, e.g.*, *Sadler v. Franklin Cnty. Sch. Dist.*, No. 3:10-CV-26 (CDL), 2011 U.S. Dist. LEXIS 85482, at *21-22 (M.D. Ga. Aug. 3, 2011) (concluding "that under Georgia's collateral estoppel rules, Sadler's claim that FCSD terminated his employment because of his age is barred by the superior court's judgment affirming Sadler's termination for cause," noting that "[a]t each stage of the proceeding, Sadler argued that his termination was the result of age discrimination and was not part of a lawful RIF," and "[t]he Board determined that cause existed to terminate his employment despite Sadler's allegations, and the State Board and the Franklin County Superior Court reviewed and affirmed that conclusion"); *Willis v. Ga. Dep't of Natural Res.*, No. 5:05-CV-420 (HL), 2007 U.S. Dist. LEXIS 72709, at *11-17 (M.D. Ga. Sept. 29, 2007)

(finding that plaintiff's Title VII race discrimination claim was barred by collateral estoppel where the administrative law judge found that the plaintiff "had 'clearly' violated Department policy and the Code of Ethics," and "rejected Plaintiff's 'contention that the Department acted in retribution or retaliation for his allegations and discrimination,' " and the state court affirmed the termination); *Baldwin v. Bob White Rents*, No. 1:05-CV-120 (WLS), 2007 U.S. Dist. LEXIS 7656, at *2-4 (M.D. Ga. Feb. 2, 2007) (refusing to allow plaintiff to amend his complaint to assert Title VII and § 1981 race discrimination claims because they were barred by collateral estoppel "as both rely on allegations litigated before an administrative hearing officer of the [GDOL] and reviewed by the Superior Court," and "as was the case with the plaintiff in *Shields*, a Superior Court, in an unemployment compensation appeal, found that Plaintiff's protected status (in this case his race) did not motivate his discharge").[8]   Thus, these cases would support the application of

---

[8] Barrow County does cite one case, *Barnes v. E.E.O.C.*, No. 5:12-CV-83 (MTT), 2012 U.S. Dist. LEXIS 115522 (M.D. Ga. Aug. 16, 2012), which arguably provides some support for its position.  (*See* Doc. 18-1 at 16).  In that case, the plaintiff had filed for unemployment benefits with the GDOL, and "[t]he GDOL determined that the Plaintiff was disqualified from receiving unemployment benefits because he was terminated for insubordination," a finding that was upheld by the hearing officer, the Board of Review, and the Superior Court of Bibb County.  2012 U.S. Dist. LEXIS 115522, at *2.  Plaintiff then filed a series of judicial complaints  in federal court, and the court found that his third lawsuit was "nearly incomprehensible and most likely [was] subject to dismissal on this ground alone."  *Id.* at *2-3.  The court construed his complaint as bringing Title VII race discrimination and retaliation claims, dismissed the race discrimination claim for failure to administratively exhaust it, and dismissed the retaliation claim based on

collateral estoppel to bar Plaintiff's race discrimination claims in their entirety if the issue of whether his termination was discriminatory had been decided in the state court proceeding.  Because that issue was not litigated and decided in the unemployment proceedings, the cases cited by Defendants do not carry the day.

Furthermore, Eleventh Circuit authority supports Plaintiff's contentions.  In *Carlisle v. Phenix City Board of Education*, 849 F.2d 1376 (11th Cir. 1988), the court considered whether Alabama's collateral estoppel rules[9] precluded the plaintiff from bringing § 1983 and Title VII race discrimination claims where the reasons for his transfer were litigated through proceedings before the board of education, the Alabama State Tenure Commission and appealed to the state court. The district court found that collateral estoppel applied and dismissed the plaintiff's claims, but the Eleventh Circuit reversed.  *Id.* at 1377.  The court explained that "[c]ollateral estoppel in this case depends on whether the race discrimination issue was litigated and decided in the state judicial proceedings." *Id.* at 1379.  "If the race claims were not decided in the course of the state appeal,

---

collateral estoppel.  *Id.* at *3, 5-7.  Citing to *Shields*, the court found that the plaintiff's retaliation claim was barred by collateral estoppel.  *Id.* at *7.  It is not clear whether the plaintiff raised the issue of retaliation at the administrative level, or whether the court took that into account in determining that his claim was barred.  Given the "nearly incomprehensible" nature of the plaintiff's complaint, the lack of extensive analysis of his claims is understandable.

[9] Alabama's collateral estoppel rules require, like Georgia, that the issue is identical to the one involved in the previous suit and that it was actually litigated in the previous action.  *See Carlisle*, 849 F.2d at 1378-79.

there can be no collateral estoppel." *Id.*  The court found that the record did not support the district court's conclusion "that race was a litigated issue in the state proceeding," but instead, "[w]hat was decided by the state appeals was that the board did have legitimate reasons that were not political or personal for transferring Carlisle." *Id.* at 1379-80.  The court explained that while "Carlisle could be . . . collaterally estopped from asserting that there were no legitimate reasons for his transfer, . . . he cannot be estopped from asserting that there was an illegitimate racial reason in addition." *Id.* at 1380.  "The absence of racial bias on the part of the board was not a finding necessary to the judgment and was not made in the course of the state proceedings." *Id.*  Thus, the court found that the district court "was wrong to base summary judgment on collateral estoppel." *Id.*

Similarly, in *Maniccia v. Brown*, 171 F.3d 1364 (11th Cir. 1999), the court considered whether the Title VII plaintiff was collaterally estopped under Florida law[10] "from arguing she did not commit the violations that led to her termination." *Id.* at 1367.  An administrative board found that the plaintiff engaged in the misconduct of which she was accused, and a state appeals court upheld that finding. *Id.* at 1367-68.  The court "agree[d] with the district court's determination that Appellant is estopped from arguing she did not lie, disseminate confidential

---

[10] Like Georgia, Florida law requires that the identical issues were presented and actually litigated in a prior proceeding. *See Palaxar Group, LLC v. Williams*, No. 6:14-cv-758-Orl, 2014 U.S. Dist. LEXIS 146681, at *39  (M.D. Fla. Oct. 2, 2014) (quotation omitted).

information, or misuse her patrol car." *Id.* at 1368. The court stressed, however, that "this conclusion does not preclude Appellant from alleging and proving her termination was the product of sex discrimination or retaliation." *Id.* (citing *Carlisle*, 849 F.2d at 1380).

During the proceedings below, Plaintiff challenged the following: Defendants' articulated reasons for terminating him, including Defendants' reliance on his arrest as a basis for terminating him; Defendants' purported shifting of the reasons for terminating him; the lack of inadequate investigation prior to terminating him; and the lack of "due process" in terminating him. (*See* Doc. 6-2; Doc. 6-3 at 10-92, 99-102). The Hearing Officer decided those issues against him and affirmed the denial of benefits, a decision that was upheld twice by the Board of Review and by the Superior Court. Thus, Plaintiff is estopped from challenging the factual predicate for his termination, from arguing that Defendants did not have legitimate reasons for terminating him, and from arguing that Defendants failed to properly investigate the allegations against him, failed to provide him with "due process" before terminating him, and gave shifting reasons for terminating him.

Plaintiff did not, however, raise the issue of whether Defendants discriminated against him on the basis of race by treating similarly situated employees outside his protected class more favorably. Nor was that issue decided. Thus, Defendants have not shown that collateral estoppel bars Plaintiff from

25

alleging and proving that Defendants discriminated against him because of his race by failing to terminate similarly situated employees outside Plaintiff's race who have engaged in the same or similar misconduct as Plaintiff. *See Maniccia*, 171 F.3d at 1368; *Carlisle*, 849 F.2d at 1379-80. The finding that Plaintiff is not estopped from litigating whether similarly situated employees outside his race were treated more favorably than Plaintiff does not end the inquiry, however. As discussed below, the undersigned finds that Plaintiff has failed to sufficiently allege facts to support his claim of disparate treatment, and therefore, his race discrimination claims fail.

## III.    <u>Failure To State A Claim Of Race Discrimination</u>

Defendants argue that Plaintiff has failed to state a plausible claim of race discrimination in light of his own allegations that he was terminated after he was arrested for sexual battery, and his failure to allege any facts to support his claim that he was terminated because of his race. (*See* Doc. 29-1 at 4-6; Doc. 35 at 1-5). The undersigned agrees.

"Disparate treatment can constitute illegal discrimination when 'an employer has treated a particular person less favorably than others because of a protected trait.' " *Uppal v. Hosp. Corp. of Am.*, 482 Fed. Appx. 394, 396 (11th Cir. 2012) (unpublished decision) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). "Although a plaintiff need not satisfy the *McDonnell Douglas*[*v. Green*, 411 U.S.

26

792 (1973)] framework at the pleading stage in order to state a claim of disparate treatment, the 'ordinary rules for assessing the sufficiency of a complaint [still] apply.' " *Id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)). " 'Although a Title VII complaint need not allege facts sufficient to make out a classic McDonnell Douglas prima facie case, it must provide enough factual matter (taken as true) to suggest intentional . . . discrimination.' " *Bowers v. Bd. of Regents of the Univ. Sys. of Ga.*, 509 Fed. Appx. 906, 910 (11th Cir. 2013) (unpublished decision) (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)) (internal quotations omitted). "The analysis of a disparate treatment claim is the same whether that claim is brought under Title VII, § 1981, or § 1983." *Hopkins v. St. Lucie Cnty. Sch. Bd.*, 399 Fed. Appx. 563, 565 (11th Cir. 2010) (unpublished decision).

Plaintiff alleges the following in support of his "cause of action for race discrimination in employment":

> 45.    The County and/or Mr. Mingledorff terminated Mr. Hale in violation of its policy that Director level terminations must be recommended by the Chairman of the Board of Commissioners and approved by a majority of Commissioners.
> 46.    The County and/or Mr. Mingledorff gave no credence to Mr. Hale's denial of the charges against him or his explanation of events, but chose to use the charges as a pretext for termination.
> 47.    The County and/or Mr. Mingledorff have treated similarly situated white employees more favorably by not terminating them without a recommendation by the Chairman of the County Commissioners and approval by a majority of County Commissioners as provided for by County policies.

27

48.     The County and/or Mr. Mingledorff have treated similarly situated white employees more favorably by crediting their denials of charges and not terminating them solely based on charges against them.

49.     The County and/or Mr. Mingledorff have treated similarly situated white employees more favorably by not terminating them without a good faith investigation of the facts surrounding charges against them.

50.     The County and/or Mr. Mingledorff have treated similarly situated white employees more favorably by not terminating them before a final adjudication of charges against them.

(Doc. 16 at ¶¶ 45-50).  Elsewhere in his Amended Complaint, Plaintiff also alleges that Defendants did not properly investigate the allegations against him, failed to wait until after the charges were adjudicated to terminate him, and gave multiple or shifting reasons for his termination.  (*See* Doc. 16 at ¶¶ 25-32, 39).

As already discussed, Plaintiff is estopped from challenging whether the factual underpinning for his termination is untrue or whether those were reasons Defendants relied on to decide to discharge him.  He is also estopped from attempting to show that Defendants' reasons are pretextual by contending that Defendants did not properly investigate the allegations against him, failed to wait until after the criminal charges were adjudicated, failed to follow proper procedures in terminating him, or have given multiple or shifting reasons for terminating him.  He raised all those issues during his unemployment proceedings and they have been decided against him. Thus, Plaintiff cannot rely on these allegations to support his race discrimination claims.

Furthermore, Plaintiff has not sufficiently alleged facts that plausibly suggest that Defendants' decision to terminate him, or the manner in which they carried out that decision, was the product of intentional race discrimination. Plaintiff contends that Defendants discriminated against him because of his race because they treated similarly situated white employees more favorably, an issue he is not estopped from litigating as discussed above.  But his assertions in the Amended Complaint that Defendants treated similarly situated employees outside his race more favorably are conclusory and devoid of sufficient factual enhancement to plausibly suggest that Defendants intentionally discriminated against Plaintiff because of his race.   "To be an adequate comparator, the individual outside the plaintiff's protected class must be 'similarly situated in all relevant aspects.' "  *Peters v. HealthSouth of Dothan, Inc.*, 542 Fed. Appx. 782, 786 (11th Cir. 2013) (unpublished decision) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)).  "That is, 'we require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.' "  *Id.* (quoting *Burke-Fowler v. Orange Cnty., Fla*., 447 F.3d 1319, 1323 (11th Cir. 2006)).   "While not always the case, differences in treatment by different supervisors or decisionmakers can seldom be the basis for a viable claim of

discrimination." *Foster v. BioLife Plasma Servs.*, 566 Fed. Appx. 808, 811 (11th Cir. 2014).

Plaintiff did not set forth any facts in his complaint concerning Defendants' allegedly more favorable treatment of other employees sufficient to raise the inference of race discrimination, such as identifying the other employees and the relevant decisionmakers, and including facts that show that the other employees held positions similar to Plaintiff's, i.e., Specialty Courts Director or other position with similar authority and responsibilities. "We have previously held that '[i]n a comparator analysis, the plaintiff is matched with a person or persons who have very similar job-related characteristics and [are] in a similar situation to determine if the plaintiff has been treated differently than others who are similar to him.' " *Caraway v. Sec'y, United States Dep't of Trans.*, 550 Fed. Appx. 704, 709 (11th Cir. 2013) (quoting *MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 774 n.16 (11th Cir. 1991)).[11]  Critically, Plaintiff has not alleged facts to show that other similarly situated white employees engaged in misconduct "nearly identical" to the misconduct Defendant relied on in terminating Plaintiff—i.e., were arrested for sexual battery and bound over for trial following a probable cause hearing, held

---

[11] In *Caraway*, the court affirmed the dismissal of the plaintiffs' complaint for failure to state a claim because the plaintiffs did not allege facts that showed that other employees were proper comparators where, among other things, purported comparators were non-supervisory employees represented by a union, and plaintiffs were non-union supervisory employees.  550 Fed. Appx. at 709.

themselves out to be court employees during their arrest, and failed to report to work because they were in jail following their arrest—but were not terminated.  In the absence of such factual enhancement, Plaintiff's conclusory allegations are insufficient to state a claim of race discrimination.[12]  *See, e.g.*, *Uppal*, 482 Fed. Appx. at 396 (affirming district court's dismissal of discrimination claims where the plaintiff "stated multiple claims for employment discrimination based solely on the repeated allegation that '[o]ther similarly situated employees outside Plaintiff's protected classes' engaged in similar misconduct, but were not disciplined," and "never once supplement[ed] these allegations of disparate treatment with any factual detail"); *Hopkins*, 399 Fed. Appx. at 566 (affirming dismissal of *pro se* plaintiff's discrimination claims for failure to state a claim because "[h]e provide[d] no facts that would allow a court to infer that the school district treated

---

[12] Plaintiff alleges that he was replaced "by Taylor Jones, a Caucasian female with no previous experience with the Specialty Courts Program."  (Doc. 16 at ¶ 40). The undersigned finds that allegation to be insufficient to plausibly suggest that Defendants intentionally discriminated against him because of his race, particularly where Plaintiff admits that he was terminated after he was arrested for sexual battery, he is estopped from challenging that Defendants terminated him because of his arrest and related conduct, and he has not sufficiently alleged facts to show that Defendants failed to terminate similarly white employees for engaging in substantially similar misconduct.  *See, e.g.*, *Eason v. Evans Cnty. Bd. of Comm'rs*, No. 6:13-cv-41, 2013 U.S. Dist. LEXIS 150085, at *7-9 (S.D. Ga. Oct. 17, 2013) (dismissing plaintiff's gender discrimination claims because plaintiff's allegation that she was replaced by a man was insufficient to plausibly suggest that the county intentionally discriminated against the plaintiff because of her gender: "hiring a man after terminating a woman does not, absent more, make discrimination a more likely explanation").

those outside the class of African-American males more favorably"); *Jackson v.*

*BellSouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004) (affirming dismissal

of race discrimination claims for failure to state a claim where the plaintiffs "failed

to identify any specific nonminority employees of BellSouth who were treated

differently in other similar cases," and "the plaintiffs' charges [were] wholly

conclusory, generalized, and non-specific claims of disparate treatment");

*Steinberg v. Donahoe*, No. 13-61617-CIV-ROSENBAUM/HUNT, 2014 U.S. Dist.

LEXIS 47776, at *32-34 (S.D. Fla. Apr. 7, 2014) (finding that plaintiff failed to

state a disparate treatment claim where  plaintiff did "not adequately allege that he

was treated less favorably than similarly situated employees who were not Jewish,"

and "offer[ed] nothing more than a conclusory statement that he was denied

benefits 'while other non-Jewish employees were not so denied' "); *Eason v. Evans*

*Cnty. Bd. of Comm'rs*, No. 6:13-cv-41, 2013 U.S. Dist. LEXIS 150085, at *7-8

(S.D. Ga. Oct. 17, 2013) (finding that plaintiff's "allegation that the County

accommodated disabled males is nothing more than a bare assertion that amounts

to a 'formulaic recitation of the elements of a constitutional discrimination claim,'

namely, that Defendants treated males similarly situated to Eason differently than

her," and "[a]s such, the allegation is conclusory and not entitled to be assumed

true" (internal quotations omitted)).

Because Plaintiff has not stated a claim of race discrimination under Title VII and § 1981/1983, it is **RECOMMENDED** that Defendants' motions to dismiss Plaintiff's Amended Complaint be **GRANTED**.

<u>**CONCLUSION**</u>

For the foregoing reasons, it is **RECOMMENDED** that Defendants' motions to dismiss (Docs. 18, 29) be **GRANTED** and Plaintiff's Amended Complaint be **DISMISSED**.

The Clerk is **DIRECTED** to terminate the reference of this case to the undersigned magistrate judge.

**IT IS SO REPORTED AND RECOMMENDED** this <u>7th</u> day of <u>November</u>, 2014.

         /s/ *J. CLAY FULLER*
        J. CLAY FULLER
        United States Magistrate Judge